UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| EVERETTE SPENCER BARNETT, )<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>Respondent. ) | Nos. 2:10-CR-116<br>2:14-CV-216 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. Section 2255, [Docs. 88],[1] filed by Everette Spencer Barnett, ("Barnett" or "petitioner") a second motion to vacate, set aside or correct sentence filed by the petitioner on February 9, 2015, [Doc. 96], a memorandum of law in support of the § 2255 motion filed on February 9, 2015, [Doc. 97], and an addendum to petitioner's § 2255 motion filed on August 29, 2016, [Doc. 106]. The government has responded in opposition, [Docs. 95, 100]. Also before the Court is petitioner's request for a scheduling order, [Doc.105]. The petitioner's motion for a scheduling order is GRANTED to the extent he seeks an adjudication of his motions but is otherwise DENIED. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary and his motions, [Docs. 88, 96], will be DENIED and the case DISMISSED.

**I.    Procedural and Factual Background**

A federal grand jury indicted Barnett on October 14, 2010, [Doc. 1], charging him with three counts of transporting a minor in interstate commerce with the intent to engage such

---

[1] All docket numbers refer to the docket sheet in No. 2:10-CR-116.

1

minor in sexual activity in violation of Title 18 U.S.C. § 2423(a).[2] After significant motion practice, Barnett entered into a written plea agreement with the United States, [Doc. 49], in which he agreed to plead guilty to Count Two of the indictment. A change of plea hearing was conducted on March 31, 2011, [Doc. 50], sentencing was set for August 29, 2011, and a presentence investigation report ("PSR") was ordered. On April 21, 2011, Barnett filed a *pro se* motion to amend/revise his plea agreement,[Doc. 52], and on July 12, 2011, he filed *pro se* motions, [Docs. 53, 54], to withdraw his plea of guilty and to substitute attorney. The motion to substitute attorney was granted on July 13, 2011, [Doc. 56]. The Court held a hearing on August 3, 2011 on the motion to withdraw plea of guilty, [Doc. 60], and entered a memorandum opinion and order, [Doc. 61], denying the motion to amend/correct and the motion to withdraw plea of guilty, [Docs. 52, 53], on August 5, 2011.

In the PSR, the probation officer assigned a base offense level of 24 pursuant to USSG § 2G1.3(a), [PSR at ¶ 17], applied a 2 level enhancement pursuant to § 2G1.1(b)(1) because petitioner's victim was a minor who was under petitioner's parental care, [*id.* at ¶ 18], a two level enhancement pursuant to § 2G1.3(b)(2)(B) because petitioner unduly influenced the minor to engage in prohibited sexual conduct, [*id.* at ¶ 19], a two level enhancement pursuant to § 2G1.3(b)(4) because the offense involved sexual contact, [*id.* at ¶ 20], and a two level enhancement pursuant to § 3C1.1 for obstruction of justice because the petitioner attempted to tamper with witnesses, [*Id.* at ¶¶ 14, 23]. The probation officer concluded that petitioner was not eligible for an acceptance of responsibility adjustment because he had attempted to withdraw his guilty plea and claimed that he was innocent, [*id.* at ¶¶ 15, 25]. Accordingly, petitioner's total

---

[2] The indictment alleges that the crime charged in Count One occurred on or about June 1, 2005 to on or about August 1, 2005. The indictment further charges that the offense charged in Count Two occurred on or about May 1, 2006 to on or about May 31, 2006 and the offense charged in Court Three was alleged to have occured on or about June 1, 2007 to on or about August 10, 2007.

offense level was 32, [*Id*. at ¶ 28]. The PSR listed 22 prior convictions of petitioner, [*Id*. at ¶¶ 33-54], two of which involved conduct with minors, [*Id*. at ¶¶ 36, 38]. Because many of the offenses were misdemeanors, petitioner had only three criminal history points, placing him in a criminal history category II, [*Id*. at ¶ 55]. His criminal history category of II, when combined with his total offense level of 32, resulted in an advisory guideline range of 135 to 168 months of imprisonment. [*Id*. at ¶ 91].

On December 31, 2011, the Court adopted the PSR and sentenced Barnett to an above guideline sentence of 264 months of imprisonment, followed by a lifetime term of supervised release, [Doc. 75]. Judgment was entered on December 28, 2011, [Doc. 77], and Barnett filed a notice of appeal to the Sixth Circuit Court of Appeals on December 29, 2011, [Doc. 78]. The Sixth Circuit affirmed this Court's judgment on February 26, 2014, [Doc. 86], and petitioner's first motion to vacate was timely filed on July 10, 2014.

The underlying facts were extensively developed through petitioner's own admissions in his plea agreement, in the PSR, and from extensive witness testimony at the sentencing hearing. Petitioner physically and sexually abused his step-daughter, NM, from the time she was 12 years old until shortly before she turned 18. [PSR at ¶ 10; Doc. 85, Tr. of Sent. Hrg., at 16-19]. Among other things, petitioner raped NM "approximately two times per week" throughout that period. [PSR at ¶ 10; Doc. 85 at 36]. When the rapes first began, NM told petitioner to stop and tried to physically resist by kicking and scratching, but petitioner was undeterred. [PSR at ¶ 10; Doc. 85 at 18]. Petitioner was stronger than NM and would beat her if she resisted; as a result, NM eventually stopped resisting, "afraid of the physical abuse that [petitioner] would inflict on her if she didn't give in." [Doc. 85 at 18-20, 37-39]. Petitioner also beat NM if she tried to date or be around boys her own age. [*Id*. at 20]. On at least one occasion, petitioner also demanded that NM

3

allow him to record a video of her masturbating. [PSR at ¶¶ 8, 10; Doc. 85 at 21-22]. Although most of the rapes occurred at NM'S home, petitioner was also raped at other locations. On one occasion in late May, 2006, when NM was 14 years of age, petitioner drove NM and her mother from their home in Tennessee to Concord, North Carolina where NM was raped by petitioner in a parking lot near the Charlotte Motor Speedway. [Doc. 49, at 2]. Approximately nine months later, NM gave birth to a son who was the first of two children fathered by petitioner. [Doc. 85 at 18-19, 30, 37, 41; PSR at ¶¶ 10-11]. The second child was born a little over a year later when NM was 16 years old. [Doc. 85 at 18-19, 30, 41; PSR at ¶ 10]. As a result of those pregnancies, NM withdrew from school when she was only in the eighth grade. [*Id*.]. The birth of the children also enabled petitioner to continue his physical and sexual abuse of NM, in that petitioner told NM he would kill her if she tried to take the children away from him, and NM feared losing custody of the children if she reported petitioner's ongoing sexual abuse. [PSR at ¶ 10].

Petitioner's abuse of NM was eventually discovered in May, 2009, when petitioner confessed to his brother that he was having a sexual relationship with NM. [PSR at ¶ 8]. Petitioner's brother reported the abuse to the Tennessee Department of Children's Services which passed the complaint along to law enforcement officials. [*Id*.]. Officers then interviewed several individuals, including NM and her mother. [*Id*. at ¶¶ 8-9; Doc. 85 at 12-22]. In June, 2009, law enforcement officers interviewed petitioner about the abuse allegations, [Doc. 85 at 22]. Petitioner denied abusing NM and claimed he had never had sexual intercourse with her. [*Id*. at 22-23]. Two months later, however, when officers sought a DNA sample from petitioner to confirm his parentage of the children, petitioner told the officers that they could only prove that one of the children was his, thus confirming that he had sexual intercourse with NM on at least one occasion. [*Id*. at 25]. During that second interview, petitioner also expressed the belief that it

4

was not illegal for him to have sex with NM as long as her mother knew about it. [*Id*. at 26].

Law enforcement officers later found a letter in petitioner's car which was addressed to NM and which thanked her for producing "two healthy boys from all that passion." [*Id*. at 30]. Petitioner was eventually arrested and charged with several Tennessee criminal offenses in December, 2009. [PSR at ¶¶ 14, 56]. A couple of weeks later, petitioner called NM's mother from jail and instructed her to take NM and the children to West Virginia. [*Id.* at ¶ 14]. Petitioner explained that the state could not do anything if they were outside of Tennessee [*Id*.]. Petitioner also attempted to contact NM to tell her not to allow law enforcement to get DNA samples from the children, [*Id*.]. Despite petitioner's effort to thwart DNA collection from the children, law enforcement officials were ultimately able to obtain DNA samples from both children and the petitioner. [*Id.* at ¶ 11]. An analysis of those samples revealed that it was 99.99 percent likely that petitioner was the biological father of both children. [*Id.*].

## II.     Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735

5

(6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

When a § 2255 Petitioner claims he was denied his sixth amendment right to effective assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). Petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably

effective assistance," *Strickland v. Washington,* 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's ] review of counsel's performance is "highly deferential." Id. at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of the time of counsel's conduct." *Id*. at 690, 104 S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. ——, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).

**III. Analysis**

Although petitioner has numbered his claims differently in his two filings, the Court gleans from them that he makes the following claims: (1) That counsel was ineffective for not explaining the "ramifications of the plea agreement;" (2) that counsel was ineffective in withholding from petitioner exculpatory "information, statements, evidence;" (3) that counsel pressured petitioner to make a false confession; (4) that counsel was ineffective by refusing to

appeal the Court's order denying his motion to withdraw his guilty plea; and (5) that counsel was ineffective by misleading petitioner, rendering his guilty plea not knowing and voluntary. The Court will address each of the issues raised by petitioner, although in a different order.

### A. Knowing and Voluntary Guilty Plea

Guilty pleas "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Rule 11 of the Federal Rules of Criminal Procedure is meant to ensure that the district court is satisfied that the defendant's plea is knowing, voluntary, and intelligent. *United States v. Vonn*, 535 U.S. 55, 58 (2002). Rule 11 requires that a district court verify that the defendant's plea is voluntary and that the defendant understood his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). It is well-settled that where a court scrupulously follows the requirements of Rule 11, "the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). *See also Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992) (defendant's "decision to lie to the district court cannot amount to prejudice"). A defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).

A plea colloquy is a solemn event and "dispositions by guilty pleas are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1997). Because courts must be able to rely on a defendant's statements during a plea colloquy, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule

11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. McMaster*, 403 F.3d 216, 221 (4th Cir. 2005) (collecting cases). Reliance on the defendant's after-the-fact claims of misrepresentation and a lack of understanding instead of the record of plea proceedings would "render[ ] the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite." *Ramos v. Rogers*, 170 F.3d 560-566 (6th Cir. 1999). The plea colloquy process exists in part to prevent defendants from making such claims. *Id*.

A prisoner may also challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two part *Strickland* test applies to a guilty plea based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). The "prejudice" inquiry, however focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the prisoner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

The petitioner here puts forward two claims that his guilty plea was not voluntary. First, he claims that he was misled by counsel as to the ramifications of his plea in that counsel led him to believe that any sentence in his parallel state case would be concurrent and that he would serve his time in a federal, not a state, prison. Second, he claims that his plea was not voluntary because counsel withheld exculpatory witness statements from three crucial witnesses until after he had already pled guilty. There are several reasons why these claims fail.

9

First of all, the Court scrupulously followed the requirements of Rule 11. *See generally*, [Doc. 57, Tr. of COP Hrg.]. The Court examined petitioner under oath as to his competence, his understanding of the nature of the charges against him and the sentence that might be imposed, the factual basis for his guilty plea, the collateral consequences of the guilty plea, and his understanding of the plea agreement. [*Id*.]. Petitioner testified unequivocally that he had received and read the indictment, had had sufficient time to discuss the case with his lawyer, had told his lawyer everything he knew about the case, and that he believed his lawyer to be fully aware of the facts upon which the charge was based. [*Id*., at 4]. He testified that his lawyer had explained the meaning of all words used in the indictment and had advised him "as to each and every element of [the] offense which the Government must prove beyond a reasonable doubt" before he could be convicted. [*Id.*, at 5]. Barnett affirmed that he had read the plea agreement, that his attorney had explained its terms and conditions, which he fully understood, and that he signed the plea agreement. [*Id*., at 7-8]. He further testified that he was satisfied with his lawyer's representation of him. [*Id*., at 8].

Petitioner testified that he understood the constitutional rights he was waiving, [*id*., at 8-10], and that he had not been pressured or forced to plead guilty, that there had been no promises of leniency aside from his plea agreement, and that there had been no "promises or threats of any kind . . . to induce him to plead guilty," aside from his plea agreement. [*Id*. at 10]. Barnett was questioned by the Court about the stipulation of facts contained in his plea agreement and offered to establish a factual basis for his guilty plea. Barnett had made and initialed one change to the stipulation. He orally made a second change to the stipulation, i.e., that the victim "was either transported by [him] or transported at [his] direction from the State of Tennessee to the State of North Carolina. [*Id*. at 11-14]. When asked by the Court if the facts contained in the

10

stipulation, with the above changes, were true, petitioner answered "oh, yes." [*Id.* at 14]. Petitioner verified that, at the time of the offense, he was thirty-six years old and the female victim was fourteen years of age, and that his sexual intercourse with the victim was a felony under North Carolina law. [*Id.* at 18]. The stipulation also recited that Barnett had an "understanding" with the state prosecutor to plead guilty to sex offenses in state court, on which he was representing himself, after the resolution of his federal charges and the sentence would be concurrent to the federal sentence. All parties, as well as petitioner, agreed that petitioner's plea agreement in the instant case did not bind the state court and the state court's refusal to comply with the understanding was no basis for withdrawing his guilty plea. [*Id.* at 19-21].

Petitioner unequivocally pled guilty without hesitation and testified that he was pleading guilty because he was "in fact, guilty of the offense." [*Id.* at 21]. He was then advised of, and acknowledged understanding of, the maximum possible penalty provided by law, that is, "[a] minimum period of five years and a maximum period of imprisonment of 30 years, a maximum period of life on supervised release, a maximum fine of two hundred and fifty thousand dollars, restitution as ordered by the Court, and a mandatory assessment of one hundred dollars." [*Id.* at 22-23]. Petitioner testified that he understood he would be adjudged guilty of a felony, that he would lose certain civil rights, and that he fully understood, and had fully discussed with his attorney, the waivers of appellate rights contained in his plea agreement, [*Id.* at 23-25]. Barnett acknowledged that he understood his sentence would be determined after the Court considered his advisory guideline range and the statutory factors listed in 18 U.S.C. § 3553(a), [*Id.* at 25-27]. Petitioner testified that he understood that, no matter what his advisory guideline range was, he could be sentenced to a 30-year term of imprisonment, and that both he and the government had the right to appeal any sentence imposed. [*Id.* at 28-29]. Based on Barnett's appearance and his

11

Case 2:10-cr-00116-JRG Document 108 Filed 01/13/17 Page 11 of 18 PageID #: 590

responsiveness to the Court's questions, the Court found him competent to enter a guilty plea, that he had "offered to plead guilty knowingly and voluntarily", and adjudged him guilty of Count Two. [*Id.*, at 31]. Barnett is now bound by his "[s]olemn declarations in open court," *Blackledge*, 431 U.S. at 74, in light of this Court's "proper, clear, and thorough plea colloquy." *Ramos*, 170 F.3d at 565.

As for petitioner's specific claims noted above, both are foreclosed by the Court's full compliance with Rule 11. "[A] claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of the plea agreement can never constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy." *Id.* In *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986), a petitioner alleged that his plea was not knowing and voluntary because his attorney had promised him that the trial court would release him on "supershock probation" after one year in prison, but this promise was not reflected in the plea agreement. The Sixth Circuit held that:

> where the court has scrupulously followed the required [plea colloquy] procedure, the defendant is bound by his statements in response to that court's inquiry. Plea bargaining is an essential component of the administration of justice. Properly administered, it is to be encouraged. It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, a plea bargain itself is contractual in nature and subject to contract-law standards. To allow defendant to attempt to prove by affidavit that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why the defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court . . . .

[*Id.* at 90] (citations and quotation marks omitted). Here, the alleged "secret term" is, at least in large part, not really secret at all, and the record flatly contradicts petitioner's claim that counsel

12

gave any misleading information at all to petitioner.[3]

As for his claim that his own attorneys withheld certain exculpatory witness statements, his knowing and voluntary guilty plea constitutes a waiver of that claim.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the depravation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [constitutionally ineffective].

*Tollett*, 411 U.S. at 258. Otherwise, a defendant could plead guilty in the hope of obtaining favorable treatment during sentencing while reserving the right to raise all manner of constitutional claims if the result of the sentencing process was not as he had hoped.

Even if the claim was not waived by his knowing and voluntary guilty plea, it appears to be foreclosed by the United States Supreme Court decision in *United States v. Ruiz*, 536 U.S. 622 (2002), which held that a guilty plea cannot be challenged on the basis that the prosecution withheld exculpatory impeachment (rather than substantive) evidence from the defendant prior to a guilty plea. Although petitioner offers nothing more than conclusory allegations, it appears that the witnesses' statements he references contained no more, at best, than impeachment evidence. There is no reason why the *Ruiz* rule would not apply equally to a claim that counsel for the petitioner had withheld exculpatory impeachment evidence. The statements at issue here, in short, consist of two types of "evidence": (1) That the mother of the victim drove her daughters to North Carolina because of her job and it was not Barnett's idea and, thus, he could not have had intent to have sexual intercourse with the minor victim, and (2) the victim "has

---

[3] It seems apparent to the Court that any remedy petitioner might have that the state prosecutor breached the "understanding" he had with Barnett would necessarily have to be pursued in state court. That appears to be precisely what Barnett has done. *See Barnett v. State*, 2015 WL 636741 (Tenn. Ct. of Crim. App. 2015) [Doc. 100, at 2].

13

Case 2:10-cr-00116-JRG   Document 108   Filed 01/13/17   Page 13 of 18   PageID #: 592

never said she had sex in Charlotte Motor Speedway or Charlotte, North Carolina." *See generally*, [Doc. 97, at 2-3]. These statements fall far short of demonstrating that petitioner is "not guilty," as he claims, but, more importantly, these statements are contradicted by petitioner's sworn testimony. Petitioner stipulated that he drove the victim (clarified at the change of plea hearing that both he and the mother of the victim did some driving) to Charlotte, North Carolina from Sullivan County, Tennessee and that he intended to engage in sexual intercourse with the victim, age 14 and 22 years younger than petitioner, in North Carolina, the felony of statutory rape under that state's law. He further stipulated that he had sexual intercourse with the victim in a parking lot located at Charlotte Motor Speedway in Concord, North Carolina. Even if the victim "has never said she had sex in Charlotte Motor Speedway," that does not disprove petitioner's clear sworn statement that they did so. These statements, even if true, provide no basis for relief for petitioner in this § 255 case and he cannot credibly claim that he would not have pled guilty if he had known of them, especially in light of his clear, unequivocal admission of guilt.

    **B.    Possibility of Term of Supervised Release (Ground One in July 10, 2014 Motion)**

Petitioner claims counsel was ineffective "for not explaining the ramifications of the Plea agreement," [Doc. 88, at 3]. More specifically, petitioner claims counsel "never advised [him] about possible [sic] being sentenced to 'supervised release' after term of incarceration," and she talked him into a plea agreement without awareness of the possibility. [*Id*.].

Even if petitioner can establish deficient performance, he can show no prejudice because the record conclusively establishes that he was informed multiple times that he was subject to a supervised release term. First of all, petitioner appeared before the United States Magistrate Judge on October 27, 2010, , long before he ever entered into a plea agreement, for his

14

initial appearance and arraignment and was advised that he faced a maximum term of life on supervised release "for all these counts." [Doc. 82 at 4]. Second, petitioner was clearly advised that he faced "a maximum term of life on supervised release," at the change of plea hearing. [Doc. 57 at 22-23]. In each case, petitioner acknowledged under oath that he understood, [Doc. 82 at 5; Doc. 57 at 23]. Furthermore, the plea agreement itself specifically referenced that the Court could impose any lawful term of supervised release up to the statutory maximum of life, [Doc. 59 at ¶¶ 1(a), 6], and petitioner verified under oath that he had read and signed the plea agreement and "fully under[stood] all the terms and conditions of the Plea Agreement," [Doc. 57 at 7-8]. This claim lacks merit.

### C. Exculpatory Witness Statements (Grounds Two, Three and Five in July 10, 2014 Motion; Grounds One, Two, and Three in February 9, 2015 Motion)

This claim has largely been discussed in § III. A. above and that discussion will not be repeated here. Nothing in petitioner's description of these statements, accepted as he describes them, "exonerates" petitioner in any way. Petitioner stipulated to facts establishing his guilt, entered a clear, unequivocal plea of guilty, and testified that he was pleading guilty because he was guilty. As noted above, "guilty pleas are accorded a great measure of finality," and the Court rightly accepted petitioner's sworn admission of guilt. Petitioner was, as the government argues, in a better position than anyone to know whether or not he committed the charged offense, and the Court "may rightly presume that petitioner would not have pleaded guilty pursuant to a plea agreement stipulating certain facts unless those facts were actually true." [Doc. 95 at 12 (citing *United States v. Socolovitch*, 340 Fed. App'x 291, 296 (6th Cir. 2009) (Defendant would not enter into a plea agreement stipulating an amount of loss unless he was actually guilty of at least that amount of loss)). In light of his sworn admissions, petitioner cannot show any prejudice by counsel's alleged failure.

15

### D. Coercion by Defense Counsel (Ground Four in July 10, 2014 Motion)

Petitioner alleges, in conclusory fashion, that counsel was ineffective by "pushing defendant into a false confession." [Doc. 88, at 7]. He asserts that he "told [counsel] that Count 2 was wrong," "that alleged statements of events was wrong," and that counsel said "she would get it corrected later." [Id.]. Once again, petitioner is bound by his sworn testimony. With one handwritten change and one oral clarification, petitioner stated unequivocally that the facts contained in his factual stipulation were true. Nothing suggests that his "confession" was false. [Doc. 57, at 14]. This claim is without merit.

### E. Ineffective Assistance of Replacement Counsel (Ground Four in February 9, 2015 Motion)

After entry of petitioner's guilty plea, but before sentencing, the assistant federal defenders representing petitioner moved to withdraw, [Doc. 55], and Barnett filed a pro se request for substitute counsel, [Doc. 54]. The Court granted the motions and substitute counsel was appointed, [Doc. 56]. Petitioner claims he requested copies of the three witness interviews referenced above but that replacement counsel refused to release that information." [Doc. 96, at 8]. For the reasons set forth above, petitioner cannot establish any prejudice as to this claim.

Petitioner further claims that counsel refused to appeal the Court's order denying his motion to withdraw his guilty plea. His allegation, however, is accompanied by no factual support or analysis, except for the claim that petitioner "asked" counsel to appeal the order. [Doc. 96, at 10]. Petitioner makes no effort to carry his burden or to establish the merits of his argument. He seems to believe that counsel's failure to appeal an issue decided by the district court when requested to do so is per se ineffective assistance of counsel. It is not. The Supreme Court rejected precisely that claim in *Jones v. Barnes*, 463 U.S. 745 (1983), holding that the indigent defendant has no constitutional right to compel appointed counsel to press nonfrivolous

16

points requests by the client. "[T]he decision of which among the possible claims to pursue [on appeal] is ordinarily entrusted to counsel's professional judgment," and "[c]ounsel's performance is strongly presumed to be effective." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (citations omitted). "[O]nly when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (quoting *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002)). The "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 447 U.S. 527, 536 (1986); *Jones*, 436 U.S. at 751-52 (1983) (experienced advocates since beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Petitioner has failed to carry his burden as to this issue.

**IV.    Conclusion**

For the reasons set forth above, the Court holds that neither petitioner's prosecution in this court nor his sentencing was in violation of the constitution or laws of the United States and he is not entitled to an evidentiary hearing. His motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, Docs. [88, 96], is DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at

17

467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE

18

Case 2:10-cr-00116-JRG   Document 108   Filed 01/13/17   Page 18 of 18   PageID #: 597